1
2
3
4
5
6
7
8       **UNITED STATES DISTRICT COURT**

9       **CENTRAL DISTRICT OF CALIFORNIA**

10

11   THERESA LYNN KOSHAK,                    Case No. CV 17-6717-AFM

12              Plaintiff,

13       v.                                  **MEMORANDUM OPINION AND**
                                             **ORDER AFFIRMING DECISION**
14   NANCY A. BERRYHILL, Acting              **OF THE COMMISSIONER**
     Commissioner of Social Security,
15

16              Defendant.

17

18          Plaintiff seeks review of the Commissioner's final decision denying her

19   applications for disability insurance benefits and supplemental security income

20   benefits. In accordance with the Court's case management order, the parties have

21   filed memorandum briefs addressing the merits of the disputed issues. This matter

22   is now ready for decision.

23                              **BACKGROUND**

24          Plaintiff first applied for disability insurance benefits and supplemental

25   security income on February 24, 2010, alleging that she became disabled on

26   February 16, 2010. On November 14, 2011, an Administrative Law Judge ("ALJ")

27   found that Plaintiff retained the residual functional capacity ("RFC") to perform a

28   restricted range of light work. The ALJ determined that Plaintiff was capable of

performing her past relevant work and, therefore, was not disabled. (Administrative Record ("AR") 66-73.) The Appeals Council denied review. (AR 59-61.)

Plaintiff filed a second application for disability insurance benefits on July 16, 2013 and a second application for supplemental security income on January 6, 2014. As in her prior applications, Plaintiff alleged disability as of February 16, 2010. Plaintiff's claims were denied initially and on reconsideration. (AR 77-127.) A different ALJ conducted a hearing on March 9, 2016, at which Plaintiff, her attorney, and Vocational Expert ("VE") were present. (AR 38-58.) The ALJ issued a decision on March 23, 2016, finding that Plaintiff had failed to rebut the presumption of continuing non-disability by showing changed circumstances. (AR 30.) Nevertheless, the ALJ also evaluated the evidence and made her own findings. The ALJ found that Plaintiff suffered from the severe impairment of degenerative disc disease. (AR 22.) The ALJ determined that Plaintiff retained the RFC to perform light work restricted to frequently climbing ramps, stairs, ladders, ropes, or scaffolds, and frequently balancing, stooping, kneeling, crouching, and crawling. (AR 26.) The ALJ concluded that Plaintiff's RFC did not preclude her from performing her past relevant work, and therefore, she was not disabled at any time through the date of the ALJ's decision. (AR 31-32.) The Appeals Council denied review, thereby rendering the ALJ's decision the final decision of the Commissioner. (AR 1-5.)

## DISPUTED ISSUES

1.     Whether the ALJ erred in finding Plaintiff's mental health condition and hand impairment were non-severe.

2.     Whether the ALJ erred in determining Plaintiff's RFC.

3.     Whether the ALJ properly evaluated Plaintiff's subjective complaints.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to

determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

## DISCUSSION

### I. Res Judicata

As a preliminary matter, the Commissioner contends that Plaintiff failed to meet her burden to show changed circumstances and, as a result, Plaintiff did not rebut the presumption of continued non-disability. Further, the Commissioner argues that Plaintiff waived any argument that the ALJ erred by relying on res judicata because Plaintiff did not raise it in her opening brief. (ECF No. 25 at 3-6.)

Contrary to the Commissioner's argument, Plaintiff's memorandum in support of her complaint explicitly argues that "the ALJ erred in failing to find that Plaintiff overcame the presumption of continued non-disability as [she] presented new and material evidence, alleged new impairments, and changed age categories since [the] 2011 decision." (ECF No. 24 at 5-6.) Plaintiff did not waive this argument. Furthermore, for the following reasons, the Commissioner's contention that res judicata was properly applied to Plaintiff's claim lacks merit.

The principles of res judicata apply to administrative decisions. *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988). Accordingly, an ALJ's determination that a claimant is not disabled creates a presumption that the claimant continued to be able to work after that date. *Vasquez v. Astrue*, 572 F.3d 586, 597 (9th Cir.

2009). More specifically, an ALJ's findings cannot be reconsidered by a subsequent ALJ unless the claimant shows "changed circumstances" – that is, new and material information not presented to the first judge. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173 (9th Cir. 2008); *Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1996); SSR 97-4(9), 1997 WL 742758, at *3 (a claimant may rebut the presumption of continuing non-disability by showing a "changed circumstance affecting the issue of disability with respect to the unadjudicated period"). "Changed circumstances" include an increase in the severity of the claimant's impairment, a change in the claimant's age category as defined in the Medical-Vocational Guidelines, or where the claimant raises a new issue such as the existence of an impairment that was not considered in the previous application or decision. *See Lester*, 81 F.3d at 827; *Chavez*, 844 F.2d at 693; *see also* SSR 97-4(9). If the claimant rebuts the presumption, an ALJ still must give effect to certain findings "contained in the final decision by an ALJ or the Appeals Council on the prior claim, when adjudicating the subsequent claim," including the findings of a claimant's RFC, education, or work experience. SSR 97-4(9); *see Smith-Scruggs v. Astrue*, 2010 WL 256546, at *2 (C.D. Cal. Jan. 21, 2010).

Here, Plaintiff alleged the existence of a new medical impairment that was not previously considered in the 2011 decision – namely depression. In addition, Plaintiff presented records from the Los Angeles County Department of Mental Health documenting mental health treatment related to depression from November 2013 through December 2015. (AR 382-405, 446-467, 521-600, 601-633.) In light of a new alleged impairment and new medical evidence supporting that impairment, Plaintiff met her burden of showing changed circumstances sufficient to rebut the presumption of continued non-disability. *See Nursement v. Astrue*, 477 Fed. App'x 453, 454 (9th Cir. 2012) (medical evaluations conducted after a prior adjudication necessarily constitute new and material evidence) (citing *Stubbs–Danielson*, 539 F.3d at 1172–1173); *Gutierrez v. Colvin*, 2016 WL 5402941, at *4 (C.D. Cal.

4

Sept. 26, 2016) (where claimant's visual field deficiency was not considered in the prior ALJ's decision, it was improper for subsequent ALJ to presume continued non-disability under a res judicata theory); *Cubilo v. Astrue*, 2012 WL 273754, at *4 (C.D. Cal. Jan. 31, 2012) (medical evidence dated after the prior ALJ's decision constitutes new and material evidence that permitted the subsequent ALJ to reassess claimant's residual functional capacity).

However, because the ALJ proceeded to evaluate all of the medical evidence and make new findings, the finding that Plaintiff did not rebut the presumption of non-disability was harmless error.

## II.    The ALJ's Non-Severity Determination

Plaintiff contends that the ALJ erred at step two of the sequential evaluation process by finding her mental health condition and hand impairment were non-severe.

At step two, the claimant has the burden to show that he has one or more "severe" medically determinable impairments. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 148 (1987); *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005). An impairment is "severe" if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 416.921(a). The evaluation at step two is a de minimis test intended to weed out the most minor of impairments. *Bowen*, 482 U.S. at 153–154 (1987); *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001). An impairment is not severe only if the evidence establishes "a slight abnormality that has no more than a minimal effect on an individuals ability to work." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (internal quotations and citations omitted).

### A.  Plaintiff's Mental Impairment

In determining whether a claimant's mental impairment is severe, an ALJ is required to evaluate the degree of mental limitation in the following four areas:

(1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. If the degree of limitation in these four areas is determined to be "mild," a plaintiff's mental impairment is generally not severe, unless there is evidence indicating a more than minimal limitation in his ability to perform basic work activities. *See* 20 C.F.R. §§ 404.1520a(c)-(d), 416.920a(c)-(d).

Here, the ALJ found that Plaintiff's medically determinable impairment of depression and history of drug use caused only mild limitations in activities of daily living; mild limitations in social functioning; and mild limitations in concentration, persistence, and pace. The ALJ found no episodes of decompensation. (AR 24-25.) Based upon her finding that Plaintiff's mental impairments did not cause more than minimal limitation in her ability to perform basic mental work activities, the ALJ concluded that they were non-severe. (AR 23, 25.)

In reaching this conclusion, the ALJ considered the entire record. Specifically, the ALJ considered the report by consultative examiner Edward Ritvo, M.D., who conducted a psychiatric evaluation of Plaintiff on October 19, 2010. Dr. Ritvo diagnosed Plaintiff with no mental disorders, noting a lack of signs or symptoms suggesting a psychiatric disorder. Dr. Ritvo found no abnormalities in any areas of the mental status examination and concluded that Plaintiff had no mental limitations. (AR 359-363.)

The ALJ also considered and relied upon the March 25, 2014 opinion of state agency physician Kevin Gregg, M.D. Dr. Gregg reviewed the medical record, including Plaintiff's treatment for depression from November 2013 to February 2014. Dr. Gregg noted that Plaintiff's depression appeared to be attributable to significant substance abuse and Plaintiff had no documented history of psychiatric disorders. According to Dr. Gregg, Plaintiff's substance abuse may increase signs and symptoms, but Plaintiff did not manifest ongoing marked functional limitations in any domain or deterioration of extended duration. Dr. Gregg concluded that

Plaintiff's mental impairment was not severe. (AR 86-91.)

The ALJ also considered the opinion of state agency physician F.L. Williams, M.D. who considered additional evidence of Plaintiff's mental health treatment from June 2014 to September 2014 before reaching the same conclusion. (AR 104-124.)

The ALJ further considered Plaintiff's mental health treatment with the Los Angeles County Department of Mental Health from November 2013 to December 2015. At her initial assessment in November 2013, Plaintiff was diagnosed with depressive disorder and polysubstance dependence. (AR 23-24, 382-386.) In discussing Plaintiff's mental health treatment, the ALJ stated that on some occasions, treatment providers indicated that Plaintiff avoided eye contact, had a dysphoric mood, and felt depressed. On other occasions, however, treatment providers indicated that Plaintiff had normal eye contact. In addition, the ALJ noted that the treatment records revealed that Plaintiff's intellectual functioning and speech was unimpaired; her thought process was organized and goal directed; she was alert, oriented, and fairly cooperative; and that over time, Plaintiff appeared to be calmer as a result of the medication. (AR 24.) Further, the ALJ pointed out that Plaintiff reported that the medication was helpful so that, by December 2015, Plaintiff was in a "good space," was making progress on her treatment goals, and feeling stable on her medication, and was "feeling no negative symptoms." (AR 24 [citing AR 529.].)

In light of Plaintiff's contention that the ALJ "parsed" or "cherry-picked" unfavorable portions of the record, the Court will discuss the relevant mental health evidence in some detail.

In November 2013, Plaintiff's mood was dysphoric and anxious. Plaintiff was not on medication at the time, but sought a prescription for Zoloft, reporting that it had previously been prescribed to her and had "made her feel better." (AR 388, 399.) In January 2014, Plaintiff still reported suffering from depression and

insomnia. Treatment notes indicate that Plaintiff was moderately irritable with staff, but later calmed down; her speech was somewhat slurred, but not pressured; her thought process was generally organized, with some incomplete thoughts/sentences; and she was oriented. Plaintiff's medication was changed to Sertraline and Seroquel to address depression plus mood stabilization. (AR 397, 463.)

On February 18, 2014, Plaintiff called the clinic seeking a medication refill, stating, "I am going crazy without the meds. I didn't realize how much they were helping me." (AR 392.) During her follow-up appointment on February 19, 2018, Plaintiff complained of depression, mood swings, and anger outbursts since she ran out of her mediation approximately nine days earlier. (AR 394.) Treatment notes reflect that Plaintiff's speech was dysphoric and her mood was depressed, but her thought process was organized and goal directed. Plaintiff was prescribed Wellbutrin and Seroquel. (AR 394.)

In March 2014, Plaintiff complained that Wellbutrin did not help her depression and it diminished her sex drive. Plaintiff's mood was noted to be "very sad," and her speech was noted as "diminished in prosody." Plaintiff's thought process, however, was organized, linear, and "without evidence of psychotic material or mania." (AR 459.) Plaintiff's medications were adjusted. She discontinued Wellbutrin and started Zoloft. (AR 459.)

Plaintiff was next seen on April 10, 2014, when she was prescribed a larger dose of Zoloft. (AR 457.)

Treatment notes from May 20, 2014 reflect that Plaintiff reported doing well on her medications, suffered no side effects, and wanted to continue them. She had doubled up on the Zoloft, however, and ran out early. (AR 454-455.) According to a mental status examination, Plaintiff's mood was dysphoric. Yet, she was oriented, calm, cooperative, her though process was linear; her cognition was intact; there was no psychosis, mania, or hypomania, or thoughts of harming self or others; she

had good insight, judgment, and impulse control. (AR 455.) Plaintiff's medication was adjusted. (AR 455.)

Plaintiff was next seen for complaints of depression on June 19, 2014. She admitted to "erratic compliance" with her medication. She became argumentative with her boyfriend, and appeared to be "act[ing] seductively" with the interviewer in order to obtain her medication. (AR 446.) According to the treatment records, Plaintiff reported that she was doing well on her current medications and wanted to continue them. She felt anxious, however, because she had run out of medications. (AR 449.) Plaintiff's affect was dysphoric. However, she was oriented, calm, and cooperative; her thought process was linear; her cognition intact; and she had good impulse control, insight, and judgment. (AR 450.) Plaintiff was prescribed Zoloft and Mirtazapine. (AR 450.)

On September 12, 2014, Plaintiff reported that she was unable to sleep at night and that she had been without medication for more than a month. Plaintiff sought a refill of her medications. (AR 621.)

On November 26, 2014, Plaintiff reported that she was doing well on her current medications, but had run out. Plaintiff stated that felt angry and irritable without Zoloft. The treatment notes indicate that Plaintiff had a positive response to mediation "when she [took] it" and suffered no side effects, but she had poor compliance. Plaintiff was oriented, calm, and cooperative; her affect dysphoric; her thought process was linear, without psychosis, mania, or hypomania; her cognition was intact; and she had fair insight, judgment, and impulse control. Plaintiff was prescribed Zoloft and Mirtazapine. (AR 618.)

Plaintiff was next seen on February 2, 2015, when she stated she was out of medication. She complained of insomnia, depression, and hearing voices. Plaintiff denied substance use, but results of a "drug screen" were positive for methamphetamine and amphetamine. (AR 617.)

On February 5, 2015, Plaintiff appeared late for her appointment at the West

Valley Mental Health and Wellness Center ("WVMHC"), so the appointment was rescheduled for February 11, 2015. (AR 613.) Later the same date, Plaintiff appeared at the Olive View Urgent Care Center seeking psychiatric treatment. Treatment notes indicate that Plaintiff appeared to be under the influence of drugs or alcohol, but she denied substance use. Plaintiff insisted on receiving medication, but her requests were denied. Instead, Plaintiff was directed to return to her case manager at WVMHC and ask to be re-drug tested so that her psychiatry appointment could be expedited. (AR 614.)

Treatment notes from March 4, 2015 indicate that Plaintiff was seen for treatment of depression and anxiety. Drug screening revealed the presence of amphetamine and marijuana, but Plaintiff claimed she never used those drugs. Plaintiff had pressured speech and jumped from one topic to the next. She reported that she had good energy but unable to sleep. She also reported that she had been getting into fights. (AR 606.)

During a March 17, 2015 appointment, Plaintiff stated that she was stabilizing on her medications and felt better. A mental examination revealed Plaintiff to be oriented. Plaintiff's affect was labile, irritable, and dysphoric; her thought process was circumstantial and at times tangential; hypomania symptoms were present including pressured speech. Plaintiff was focused on obtaining Ritalin and sleeping pills, but those medications were not prescribed in light of Plaintiff's history of substance abuse. (AR 604.)

On April 9, 2015, Plaintiff reported feeling irritable and angry, unable to concentrate, and suffering from insomnia. She denied using "street drugs," but tested positive for marijuana. Plaintiff's affect was dysphoric; her thought process was circumstantial and at times tangential; she had fair insight, judgment, and impulse control. She complained that the medication decreased her sex drive. (AR 593.) Her medications were adjusted. (AR 595.)

On May 6, 2015, Plaintiff complained of depression and anxiety. She

indicated that her medication made her feel suicidal and diminished her sex drive, and she asked for medication to improve her concentration. Plaintiff was oriented and fairly cooperative. Her affect was labile, irritable, and dysphoric. Her thought process was circumstantial and tangential. Plaintiff's medications were adjusted. (AR 586-588.)

On June 3, 2015, Plaintiff reported feeling stress due to health problems, financial problems, homelessness, and her son's incarceration. She was oriented and fairly cooperative. Her affect was dysphoric; her thought process circumstantial and at times tangential. Plaintiff's medications were adjusted. (AR 569.)

On July 22, 2015, Plaintiff again complained of stress. She requested a prescription for Zoloft because it helped improve her mood and irritability. Plaintiff looked "calmer." She was oriented; her mood was anxious; her affect was dysphoric; her thought process was circumstantial and at times tangential; her insight, judgment and impulse control were fair. Plaintiff's medications were adjusted to add Zoloft. (AR 550.)

During an August 18, 2015 phone call, Plaintiff reported feeling better, stable, and having no negative side effects. (AR 542.)

A September 16, 2015 treatment note indicates that Plaintiff appeared calmer; she reported no side effects from her medication; she was well groomed; she was oriented and fairly cooperative; her mood was anxious and dysphoric; her affect appropriate; her thought process linear; she had fair insight, judgment, and impulse control. Plaintiff's prescription medications were continued. (AR 532.)

On September 25, 2015, Plaintiff reported good progress and stability on her medications. A urine test was negative for controlled substances. (AR 529.) In a telephone call on September 28, 2015, Plaintiff again reported "feeling stable on her medication." (AR 528.)

During Plaintiff's appointment on December 18, 2015, she inquired about medication for anxiety. Her treatment provider discussed coping methods to help

with anxiety, such as walking, yoga, and talk therapy. (AR 522.)

In support of her claim that the ALJ erred in finding her mental impairment non-severe, Plaintiff points to particular portions of the above medical records reflecting her diagnosis with depression; reports of inappropriate conduct, such as fighting; and notes reflecting her complaints of difficulty concentrating or feeling anxious. The existence of an impairment, diagnosis, or symptom, however, does not mean that Plaintiff suffered from a significant limitation in her ability to perform work activities. To the contrary, standing alone, neither a diagnosis nor a claimant's subjective complaints are sufficient to demonstrate severity at step two. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164-1165 (9th Cir. 2008) (ALJ did not err at step two by failing to classify carpal tunnel syndrome as a severe impairment where the medical record did not establish work-related limitations); *Lindsay v. Berryhill*, 2018 WL 3487167, at *4 (C.D. Cal. July 18, 2018) (evidence supported ALJ's determination that claimant's depression, anxiety and history of alcohol abuse in remission did not constitute severe impairments); *Draiman v. Berryhill*, 2018 WL 895445, at *7 (C.D. Cal. Feb. 13, 2018) (claimant's "diagnoses of Major Depressive Disorder and Generalized Anxiety Disorder are insufficient to demonstrate that she has a severe mental impairment" at step two).

As detailed above, Plaintiff's mental health records include no medical opinion that Plaintiff's mental impairment resulted in any particular limitations on her ability to work. Instead, Plaintiff's records reveal that other than a dysphoric mood, Plaintiff's mental status examinations were almost always unremarkable and that her mental impairment was treated with medication. After she was prescribed Zoloft in July 2015, Plaintiff reported being stable and without negative side effects, the frequency of Plaintiff's mental health treatment decreased significantly, and she stopped complaining of depression. In sum, the ALJ's characterization of the mental health evidence is supported by the record.

Plaintiff contends that the ALJ should have found her mental impairment

severe based upon her testimony or statements – for example, her statements that she got into fights, people did not like her, she did not want to leave her house, she had trouble "staying on track" or focusing, and she had problems being on time. According to Plaintiff, this testimony was "consistent with" or "relevant to" Plaintiff's impaired social functioning, impaired ability to maintain concentration, persistence, and pace, and impaired ability to maintain attendance. (ECF No. 24 at 13-14.) As discussed below, however, the ALJ properly rejected Plaintiff's subjective complaints about her symptoms and limitations stemming from her mental impairment.

For the foregoing reasons, the ALJ's determination that Plaintiff's mental impairments did not impose more than minimal limitation on her ability to perform work related activity is supported by substantial evidence. *See Davenport v. Colvin*, 608 Fed. App'x 480, 481 (9th Cir. 2015) (in reviewing step two determination, the Court considers whether "the ALJ had substantial evidence to find that the medical evidence clearly established that" Plaintiff did not have a severe mental impairment); *Lomas v. Colvin*, 2014 WL 6775762, at *4-5 (C.D. Cal. Dec. 2, 2014) (substantial evidence supported ALJ's finding of non-severe mental impairments was supported by substantial evidence, including claimant's lack of credibility, a credibility determination that the claimant did not challenge); *Sevier v. Colvin*, 2014 WL 1247369, at *6 (E.D. Cal. Mar. 25, 2014) (ALJ's finding of non-severity supported by substantial evidence where record did not "reflect any functional limitations associated with Plaintiff's diagnoses of major depressive disorder, posttraumatic stress disorder, and panic disorder with agoraphobia").

### B. Plaintiff's Hand Impairment

The ALJ also found that Plaintiff's hand impairment was non-severe. In reaching that decision, the ALJ noted that Plaintiff was diagnosed with right hand boxer's fracture in August 2014 based upon tenderness and swelling at the fracture site. (AR 473.) Plaintiff sought treatment for her right hand in October 2014.

During her initial appointment with Dr. Christopher Lee, Plaintiff stated that she had injured her right hand in July 2014, when she got into a fight and hit someone on the back of the head. Dr. Lee's notes state that the fracture had healed, but Plaintiff was left with residual stiffness and discomfort. (AR 488.) X-rays revealed a fracture malunion. In a follow up in November 2014, Dr. Lee noted that although authorization was approved, Plaintiff had failed to begin physical therapy. He diagnosed Plaintiff with fracture malunion and prescribed physical therapy. (AR 492.)

A January 2015 examination revealed that Plaintiff had good range of motion in her hand and clinical testing revealed no objective findings. Dr. Lee reported a ganglion cyst on Plaintiff's right dorsal wrist and performed an aspiration. Dr. Lee again instructed Plaintiff to begin physical therapy if she expected any improvement. (AR 494.) Plaintiff saw Dr. Lee again in February 2015, complaining of limited use of her right hand. She still had not begun physical therapy. Plaintiff was able to flex and extend all fingers with good range of motion. Because the cyst had returned, Dr. Lee performed another aspiration. He reiterated that Plaintiff needed to start physical therapy. (AR 500.) Examinations in March, May, and June 2015 were essentially identical – that is, there were no additional findings related to Plaintiff's right hand, but on two occasions, the ganglion cyst on her wrist was aspirated. Dr. Lee continued to recommend physical therapy and home exercise. (AR 509, 515, 518.) Finally, in August 2015, Plaintiff again complained of right hand pain and a lack of improvement. Dr. Lee noted that Plaintiff had good range of motion, although not complete. Plaintiff was again instructed to start physical therapy. (AR 520.)

In light of the foregoing, the ALJ's conclusion that Plaintiff's hand impairment was non-severe is supported by substantial evidence. As the ALJ noted, Dr. Lee consistently found that Plaintiff was able to flex and extend all fingers and that her hand had no edema or erythema, was neurovascularly intact, and had good

range of motion. (AR 23.) Notwithstanding Plaintiff's conclusory assertion, she has failed to point to any medical evidence showing that her fracture malunion caused any significant limitation on her ability to perform work-related activities such as lifting, pushing, pulling reaching, or handling. Notably absent from the record is any medical opinion that Plaintiff's hand impairment resulted in a functional limitation. Further, as discussed below, to the extent that Plaintiff's claim is based upon her subjective complaints or testimony, the ALJ properly rejected it.

## III.    The ALJ's RFC Determination

Plaintiff contends that the ALJ erred in her RFC assessment by failing to include limitations caused by depression and her right hand injury – including limitations in her ability to interact appropriately with co-workers, supervisors and the public; maintain attendance; maintain adequate concentration, persistence and pace; understand and follow instructions; and "limitations in the use of the dominant hand due to malunion facture with ongoing pain and weakness."  (ECF No. 24 at 17, 19). Plaintiff argues that the ALJ improperly ignored medical evidence that would support inclusion of these restrictions. (ECF No. 24 at 18.)

The regulations require the ALJ to consider the limiting effect of all impairments, including those that are non-severe. The regulations, however, do not require the ALJ to include limitations in the RFC if the record supports a conclusion that the non-severe impairment does not cause a significant limitation in the claimant's ability to work. *See Banks v. Berryhill*, 2018 WL 1631277, at *4 (C.D. Cal. Apr. 2, 2018); *Aranda v. Berryhill*, 2017 WL 3399999, at *6 (C.D. Cal. Aug. 8, 2017). Rather, as long as the ALJ "actually reviews the record and specifies reasons supported by substantial evidence for not including the non-severe impairment [in the RFC determination], the ALJ has not committed legal error." *Medlock v. Colvin*, 2016 WL 6137399, at *5 (C.D. Cal. Oct. 20, 2016); *see also McIntosh v. Berryhill*, 2018 WL 3218105, at *4 (C.D. Cal. June 29, 2018) (because

ALJ concluded that mental impairment caused no more than minimal restrictions, there was no requirement to include it in the claimant's RFC).

Here, the ALJ reviewed all of the evidence related to Plaintiff's mental impairment and provided reasons for concluding that her impairment did not impose any additional limitations on her ability to work. (*See* AR 23-25, 29-30.)

In particular, the ALJ gave great weight to Dr. Ritvo's opinion that Plaintiff had no mental limitations. (AR 29.) Generally, the opinion of an examining physician based upon his own clinical findings constitutes substantial evidence, especially when, as here, that opinion is not contradicted by the opinion of a treating physician. Thus, the ALJ was entitled to rely upon Dr. Ritvo's opinion. *See Orn*, 495 F.3d at 632 ("[W]hen an examining physician provides independent clinical findings that differ from the findings of the treating physician, such findings are substantial evidence") (internal quotation marks omitted); *Soltero v. Colvin*, 2015 WL 3452616, at *4 (C.D. Cal. May 29, 2015) ("[t]he consultative examiner's opinion was based on his own clinical findings, and since the consultative examiner's opinion and the non-examining physician's opinion were not inconsistent with the opinion of any treating physician, the ALJ was entitled to rely on them.").

The ALJ also considered all of Plaintiff's treatment records from 2013 to 2015 before concluding that they did not support the conclusion that Plaintiff suffered from a significant mental impairment. As set forth above, other than dysphoric mood, Plaintiff's treatment records from November 2013 to December 2015 include no clinical findings or medical opinions indicating that Plaintiff suffered any work-related limitation as a result of her depression or history of substance abuse. Even if the records might be read to support Plaintiff's argument, they also support the ALJ's conclusion that Plaintiff's medication effectively treated her depression. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (the court must defer to an ALJ's reasonable interpretation of the medical

evidence); *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007) ("Where the evidence can reasonably support either affirming or reversing the decision, we may not substitute our judgment for that of the Commissioner.").

Plaintiff objects to the ALJ's reliance upon Dr. Ritvo's opinion on the ground that his consultative examination was performed in October 2010, "prior to when [Plaintiff] began receiving mental health treatment." (ECF NO. 24 at 19-20.) However, Plaintiff alleged disability beginning February 2010. Thus, Dr. Ritvo's opinion regarding her mental impairment is relevant to her claim.

Plaintiff also objects to the ALJ's reliance upon the opinions of the state agency physicians. Generally, the opinion of a non-examining medical expert may constitute substantial evidence when it is consistent with other independent evidence in the record. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

Plaintiff argues that the ALJ improperly relied upon Dr. Gregg's opinion because it was provided in February 2014, only a few months after Plaintiff began receiving mental health treatment. (ECF No. 24 at 20.) Dr. Gregg, however, reviewed several months of Plaintiff's mental health records, including records from November 2013 through February 2014. (*See* AR 79, 81-82.) Thus, Dr. Gregg was aware of, and addressed, Plaintiff's diagnosis of depression and history of substance abuse, clinical observations of dysphoric mood, lack of eye contact, anger outbursts, irritability, and mood swings, among other things. (AR 81-82.) Dr. Gregg found Plaintiff's mental impairment did not result in any ongoing marked functional limitations. (AR 82.) Further, contrary to Plaintiff's contention, Dr. Gregg did not indicate that the evidence was insufficient because Plaintiff only recently began treatment for depression. Rather, Dr. Gregg's remark regarding the sufficiency of the evidence was made in relation to his notation that Plaintiff had failed to appear for a scheduled consultative examination. (*See* AR 80-81.)

Similarly, Plaintiff argues that the ALJ improperly relied upon Dr.

Williams's opinion because it "was no more than a duplication of the prior February 2014 assessment." (ECF No. 24 at 20.) Plaintiff misstates the record. Dr. Williams's report did not merely "duplicate" Dr. Gregg's report. Instead, Dr. William considered additional evidence relating to Plaintiff's mental health treatment to September 2014 before reaching the same conclusion. (AR 100-105.)

Thus, Plaintiff's contention that it was improper for the ALJ to rely upon these opinions is unpersuasive.

With regard to Plaintiff's hand impairment, Plaintiff fails to point to any evidence demonstrating that her fraction malunion imposed any functional limitations.

In sum, the ALJ thoroughly considered all of the evidence regarding Plaintiff's mental impairment and hand impairment before concluding that they did not warrant inclusion of any limitations in the RFC. Plaintiff has failed to demonstrate that the ALJ erred in assessing Plaintiff's RFC. *See Banks*, 2018 WL 1631277, at *4 ("Because Plaintiff's mental impairment was not severe and did not cause any significant impairment, the ALJ was not required to include it in Plaintiff's RFC.").

**IV.  Subjective Complaints**

Plaintiff contends that the ALJ failed to provide adequate reasons for discounting her subjective complaints.

**A.  Plaintiff's Testimony and Statements**

Plaintiff testified that she was unable to work due to back pain and depression. (AR 49-50.) She explained that although the medication Plaintiff took helped, she still felt depressed all of the time. (AR 52.) As a result of Plaintiff's depression, she did not want to leave her house. Plaintiff had to force herself to leave the house about ten times a month to attend meetings or church. (AR 52-54.) Plaintiff also testified that she was unable to work because she had "a lot of anxiety" and people "just don't like me." (AR 47.)

Plaintiff completed an Adult Disability Report in July 2014, in which she stated that she was unable to work due to lower back pain, an inability to focus, depression, and difficulties being around people. (AR 248.) Plaintiff described her daily activities as sleeping all day and looking for places to stay because she was homeless. (AR 249.) Plaintiff stated that she needed reminders to bathe and take medications. (AR 250.) Plaintiff did not prepare her own meals because she was homeless, so she ate at "fast food  & EBT places." (AR 250-251.) Plaintiff did not want to go anywhere alone because she needed "someone to protect" her. (AR 251.) She did not have hobbies, did not participate in social activities, and did not like to be around other people. (AR 252.) Plaintiff estimated that she could walk half a block before needing to rest; she could pay attention for two minutes; she did not follow written instructions well; and she needed to be told two to three times before she could follow spoken instructions. (AR 253.) Finally, Plaintiff indicated that she used a brace that had been prescribed a week earlier. (AR 254.)

**B.  Law Regarding Consideration of A Claimant's Subjective Symptoms**

The parties agree that Social Security Ruling 16-3P applies to this case. SSR 16-3P rescinded and superseded the Commissioner's prior rulings as to how the Commissioner will evaluate a claimant's statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims. *See* SSR 16-3P, 2017 WL 5180304, at *1. In pertinent part, SSR 16-3P eliminated the use of the term "credibility" and clarified that the Commissioner's subjective symptom evaluation "is not an examination of an individual's character." SSR 16-3P, 2017 WL 5180304, at *2.

The Commissioner argues that the Court should refer to the regulations rather than follow legal authorities predating the SSR. The Ninth Circuit, however, has found the changes in SSR 16-3P are largely stylistic and held that SSR 16-3P is consistent in substance with Ninth Circuit precedent that existed before the effective date. *Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017). As the

Court explained in *Trevizo*, SSR 16-3p "makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after [the ALJ] find[s] that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms,' and 'not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness.'" *Trevizo*, 871 F.3d at 687 n.5 (citing SSR 16-3p). Accordingly, the Court relies upon Ninth Circuit authority governing the proper method for assessing a claimant's credibility.

Where, as here, a claimant has presented evidence of an underlying impairment and the record is devoid of affirmative evidence of malingering, the ALJ must provide "specific, clear and convincing" reasons for rejecting the claimant's subjective symptom statements. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014) (quoting *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012)). "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Burrell*, 775 F.3d at 1138 (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc)).

Factors the ALJ may consider when making such a determination include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, and inconsistencies in testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *see generally* 20 C.F.R. §§ 404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated). "When evidence reasonably supports either confirming or

reversing the ALJ's decision, [the court] may not substitute [its] judgment for that of the ALJ." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

### C.  The ALJ's Decision

#### 1.  Lack of Objective Medical Evidence

The ALJ summarized the objective medical evidence and concluded that it did not support the extent and severity of Plaintiff's alleged symptoms. (AR 28.) In particular, the ALJ found nothing supported Plaintiff's allegations that she could not walk more than a half of a block. (AR 28.)

With regard to Plaintiff's severe impairment of degenerative disk disease, the ALJ noted that the examinations regularly showed "normal range of motion, normal strength, normal gait, no radiculopathy and negative straight leg raising tests." (AR 27-28, 339, 443, 663-665.) In addition, the ALJ noted that Plaintiff did not use an assistive device. (*See* AR 28, 660, 665.) The findings of the consultative examiner, Jared Niska, M.D., were cited by the ALJ and were similar. Specifically, Plaintiff's gait was slower but without pain; she was able to squat, toe and heel walk with only mild difficulty; and although she had some mild muscle spasm in the lumbar spine, her straight leg raise tests were negative. In addition, Dr. Niska found that Plaintiff's lower and upper extremity musculoskeletal and neurovascular systems were completely normal (AR 28, 468-473.) The ALJ also pointed out that a May 2014 health assessment indicated that Plaintiff's gait was normal, her strength was normal, and her spine was non-tender to palpation. (AR 442-443.) The record supports the ALJ's conclusion that the mild medical evidence did not support Plaintiff's allegation that she was able to walk only a half a block or that she required a brace. (AR 28.)

With regard to Plaintiff's mental impairment, the ALJ's characterization of the objective medical evidence set forth in detail above was neither inaccurate nor incomplete. So long as it was not the sole basis for her credibility determination, the

ALJ was entitled to rely upon the lack of objective medical evidence to discredit Plaintiff's subjective complaints. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."); *Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 600 (9th Cir. 1999) (conflicts between a claimant's testimony and the objective medical evidence in the record can undermine a claimant's credibility). Here, the ALJ did not rely solely upon the lack of objective medical evidence, but provided the following additional reasons for discrediting Plaintiff's testimony.

### 2. Plaintiff declined physical therapy

The ALJ noted that Plaintiff declined physical therapy for her back and found that this suggested that Plaintiff's back pain was not as severe as she alleged. (AR 28, AR 340.)

Where a claimant complains about debilitating pain, an unexplained, or inadequately explained, failure to seek treatment may be the basis for finding the complaint unjustified or exaggerated. *Molina*, 674 F.3d at 1112; *Orn*, 495 F.3d at 638 ("Our case law is clear that is a claimant complains about disabling pain but ... fails to follow prescribed treatment[ ] for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated.") (internal quotation marks omitted). Accordingly, Plaintiff's failure to pursue physical therapy was a proper basis for the ALJ's adverse credibility determination.

### 3. Plaintiff's symptoms were controlled

With regard to Plaintiff's back impairment, the ALJ noted that Plaintiff received several lumbar spine injections in 2010 and again in March and April

2010, and that she reported obtaining "good relief" from the injections. (AR 27 [citing AR 663].) The ALJ's characterization of Plaintiff's treatment is borne out by the record. As the ALJ stated, Plaintiff indicated improvement after the spinal injections and repeatedly reported that she obtained "good relief," and her breakthrough pain was "mild." (AR 657-665.)

With regard to Plaintiff's mental impairment, the ALJ pointed out that Plaintiff's treatment records showed that medication provided relief from her symptoms. In particular, the ALJ noted that Plaintiff's treatment providers remarked that she appeared calmer with medication. Indeed, Plaintiff "herself reported that medication was very helpful," that she was in a "good space," was making progress on her treatment goals, felt stable on medication, and reported "feeling no negative symptoms." (AR 24, 529, 608.) As discussed in detail above, Plaintiff's treatment notes regarding her mental impairment reflect that she was stable and improved with the use of Zoloft and other medications. Thus, the ALJ's characterization of the record is supported by substantial evidence.

This evidence that Plaintiff's impairments were controlled by treatment and medication was a proper reason to discount Plaintiff's subjective complaints. *See Bailey v. Colvin*, 659 Fed. App'x 413, 415 (9th Cir. 2016) (ALJ appropriately noted that many of claimant's impairments had been alleviated by effective medical treatment, and this was inconsistent with claimant's alleged total disability); *Warre v. Comm'r of the Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling."); *Tidwell v. Apfel*, 161 F.3d 599, 601–602 (9th Cir. 1999) (in assessing claimant's credibility, the ALJ did not err in considering that medication "aided" the claimant's symptoms).

### 4. Inconsistencies

The ALJ found that Plaintiff's allegation that she was unable to walk for more than half a block without resting was inconsistent with her statement that she

spent the day looking for a place to stay − an activity which reasonably contemplated walking longer distances. She also noted that Plaintiff denied using marijuana even though the treatment records showed that Plaintiff tested positive for THC. Such inconsistencies by Plaintiff are a proper basis for the ALJ's credibility determination. *See Tonapetyan*, 242 F.3d at 1148 (ALJ can use "ordinary techniques of credibility evaluation" and may rely on inconsistent statements in testimony); *Matthews v. Shalala*, 10 F.3d 678, 679–680 (9th Cir.1993) (holding that the ALJ properly considered the claimant's inconsistent statements as part of his credibility analysis); *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (holding that inconsistent statements regarding alcohol use may be considered as a reason to reject a claimant's testimony).

Plaintiff also asserted that she did not get along with authority figures and had difficulties in social functioning. As the ALJ pointed out, however, the record demonstrated that other than one session in which Plaintiff initially was argumentative and irritable, Plaintiff was repeatedly described as pleasant and cooperative, and Plaintiff was able to effectively communicate with her treatment in various settings, including in obtaining household appliances at low cost. (AR 24-25, 397, 400, 455, 460-463, 533, 536.) Similarly, the ALJ noted that despite her allegation that she had difficulties focusing and following directions, Plaintiff was able to apply for section 8 housing and able to recall all of her past homeless locations. (AR 25, 533-537, 539-553, 601.) The ALJ could properly rely upon these inconsistencies in discounting Plaintiff's subjective complaints. *See Carmickle*, 533 F.3d at 1161 (ALJ properly rejected claimant's assertion that he needed to "change positions constantly" when sitting, finding it inconsistent with claimant's full-time college attendance).

Furthermore, it appears that the ALJ discounted Plaintiff's allegations regarding her functional limitations because they were inconsistent with the physician's opinions. For example, the ALJ noted Plaintiff's allegations but instead

adopted physicians' contrary opinions regarding Plaintiff's functional capacity. (AR 25, 29; citing AR 470-474 [Dr. Niska's report including his opinion that Plaintiff could stand and walk for six hours in an eight-hour workday)], 361-363 [Dr. Ritvo's clinical test showing no memory impairment and his opinion that Plaintiff had no impairment in her ability to understand, remember and complete simple or complex commands].) This was another proper basis for the ALJ's credibility determination. *See Molina*, 674 F.3d at 1113 (ALJ's credibility determination supported by finding that claimant's allegations that she was disabled by anxiety were contradicted by physicians' conclusions that claimant's anxiety disorder was not severe and that she was able to control it with medication and self-calming techniques); *Carmickle*, 533 F.3d at 1161 (ALJ properly rejected claimant's testimony that he could lift only 10 pounds occasionally as lacking credibility in light of physician's contradictory opinion that claimant could lift up to 10 pounds frequently).

### 5. Additional Reasons Provided by the ALJ

The Commissioner points to other reasons provided by the ALJ for discrediting Plaintiff, including the fact that Plaintiff failed to appear at a consultative examination scheduled for March 2014 and notations that Plaintiff was a poor historian who was unable to provide reliable information. (ECF No. 25 at 16-17; *see* AR 28, 440.) It is not clear that these reasons constitute legitimate basis for the ALJ's credibility determination, particularly in light of Plaintiff's allegations regarding the effects of her mental impairment. *See, e.g.*, *Showers v. Berryhill*, 2017 WL 3720339, at *6-7 (E.D. Cal. Aug. 29, 2017) (facts that claimant failed to show up at his scheduled consultative examination and had been disrespectful during a psychological evaluation weighed little on credibility, especially where claimant allegedly suffered from delusions).

Nevertheless, even assuming that some of the other reasons provided by the ALJ for reaching her credibility determination were improper, any error in this

regard was harmless in light of the other legally sufficient reasons for the ALJ's determination. *See Molina*, 674 F.3d at 1115 (where one or more reasons supporting ALJ's credibility analysis are invalid, error is harmless if ALJ provided other valid reasons supported by the record); *Batson*, 359 F.3d at 1197 (even if the record did not support one of the ALJ's stated reasons, the error was harmless where ALJ provided other valid bases for credibility determination).

**************

Accordingly, for the foregoing reasons, IT IS ORDERED that Judgment be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

DATED:  9/19/18

_____
ALEXANDER F. MacKINNON
UNITED STATES MAGISTRATE JUDGE